We'll hear argument now in the case of Stevens against Immigration and Customs Enforcement. Ms. Myron. Good morning. May it please the court, Laura Myron for the government. The district court here considered a small fraction of the documents at issue in the production order, and based on three errors, it ordered the production of the bill. Ms. Myron, before we get into the merits, I have a question about jurisdiction, which is, what are you appealing? We are appealing the order of the district court that we produce 2,000 pages. So where is the order of the district court? I looked in the appendix, which requires the parties to include the judgment being appealed, and there doesn't appear to be one. So in the addendum to the government's brief, there is an opinion of the district court. There is an opinion, but you can't appeal from an opinion. One appeals from a judgment. So, yes, I understand that, Your Honor, but the opinion is an order requiring production. There is no order that I can find. There is an opinion, but I can't find an order. It's certainly not in the appendix to your brief. Your Honor, on page 24 of the... What your brief says is that disclosure orders in FOIA cases are injunctive in nature. All right? So that leads to the question, where's the injunction? On page 24 of the addendum to the government's brief, the district court says, and this is... Look, this is a fairly fundamental point. What district courts say in their opinions is not a judgment and is not an injunction. Rule 65 couldn't be clearer that injunctions have to be separate documents expressly describing what is to be done. This leads me to look for a Rule 65 injunction. Is there one? The court says, the court orders ICE to produce the records in full. Opinions count for squat. Look, Your Honor... We have said this in injunctive cases over and over. Did you go to the district judge and say, you know, we see what you say in your opinion. Please enter an injunction complying with Rule 65. Did you do that? No, Your Honor, and look, if this court were to conclude that there's no jurisdiction over this appeal for that reason, we can go back to the district court and ask for a separate document that says exactly what the court has said, that says it orders ICE to produce the documents in full. There are reasons for Rule 65. It's not just hot air. We have enforced Rule 65 repeatedly. It's very distressing that the district judge and the parties simply ignore the need for an injunction in a case allegedly being appealed as an injunction. I understand, Your Honor. I can point you to where it says in the record that the court is ordering ICE to produce the documents. We have noted that FOIA production orders are treated as injunctions for purposes of  If the court were to send this case back for that purpose, we can correct that error. But while I'm here, I'm happy to address any of the questions the court may have on the FOIA production order. I have a number of things to say about why— I know you have a number of things to say, but it certainly would have been easier all around to say initially to the district judge that to have an injunction, you need to comply with the rules for entering injunctions. Certainly, Your Honor. I understand that you have that concern, but given that that is water under the bridge at this point, and I am here before the court to answer questions about the issues presented, I am happy to do so. I'd like to touch on the question of whether the errors identified by the district court with respect to the sample documents justify a finding of bad faith, and also note that what the district court did, even if this court were to agree, what the district court did in response is wildly overbroad and out of sync with how courts have handled these situations in other cases. The order requires the production of 2,000-plus pages— Ms. Myron, could I ask you a question with regard to kind of the underlying procedure that led to the motion for summary judgment? I understand that the parties agreed that they would provide a limited number, what the parties called a sample set of documents, to the district court, and the Vaughn index would be based upon that, and that's what the parties would litigate. What was the parties' thinking as to kind of where they go from there? So, let's say the court ruled on the 140 samples. What next? So, samples of this kind are a common practice in criminal cases, and I guess I would say there's sort of two paths forward. Hold on, so that I'm clear. I understand that samples—as a district judge, I've done this in the past, okay? Yes, Your Honor. But usually, before we go down the sample road, there's some sort of understanding amongst everyone, including the judge, as to kind of why go through this exercise, right? Is it kind of a bellwether exercise so that the parties can then go back and confer about the remaining, you know, the rest of the 2,000 documents to kind of narrow their disputes? Or is it supposed to be a conclusive determination as to those 2,000 documents in categories? Like, what was the purpose of it? Sure. So, if the court had found that the sample was properly redacted and all of the redactions were lawful and represented lawful withholdings, then it could grant summary judgment for the government for the redactions in the rest of the remaining 2,000 pages. It could use, effectively, the sample as a shortcut to allow it to grant withholding—to allow for the lawful withholding of the rest of the redactions without considering each one individually. What if the court had determined half were correctly redacted and half weren't? Then what? So, if the court has concerns about the redactions—I think this is the sample point that a plaintiff is making—then it is required to take a closer look at the rest of the redactions. It has a number of tools. It can order the agency to produce additional detailed information about the redactions in question. It can order the agency to reprocess the documents. But what it doesn't do is just order the disclosure—  Hold on for a second. I know what the court did, and I know what you think the court shouldn't have done. My question to you is, let's say the court did go through the 160, and let's say it found that on 50% of them, the government was right. On the other 50%, Ms. Stevens was right. Okay, now we have this other 1,700 documents out there. Were the parties going to go individually through them, or was it going to be bound by what the court did here? What was the understanding? My understanding is that if the sample did not reflect a consistent withholding that would allow the court to grant summary judgment for the government on all the documents, that additional consideration on a document-by-document basis would be the next step. For the 2,000 documents? For the rest of the documents. Obviously, the litigation didn't reach that point because the court determined that not If that was the point, then the whole exercise would have been pointless, because in the end, what you're saying is that the district court has no choice but to go through the 2,000 documents, right? What you're saying is that the district court, basically your argument is the district court cannot extrapolate its finding of bad faith with regard to assuming that the district court was right with regard to its finding of bad faith as to, let's say, this handful of documents. The district court cannot then extrapolate that to apply it to other documents for which it did not conduct its own individual review. I think that's the... Hold on. The question is, wouldn't that apply for the rest of the 2,000 documents? What was the whole point of it if that was your understanding of what was going on with the summary judgment motion? I'd like to push back in two respects. The first is the district court's finding that 25% or in your hypothetical 50% of the redactions would allow the government to withhold those 50% or 75% redactions. The district court here ordered production of even the 75% of the redactions that it determined to be fine. I think it is right that if a court does not think that the sample allows it to extrapolate that all of the redactions in the 2,000 page production would be at a level it could grant summary judgment for without individual consideration, that the next step is individual consideration. That the shortcut is not available to the government. Did the parties agree that the 2,000 documents bound by the district court's judgment as to the 160 here? That's my question. No, Your Honor, not in the sense that if the court found that there were problems with the... And I don't know how they could because if the court found that there were sort of problems throughout... Well, you can agree to anything. And so, I guess my question is, let's say the district court went through the whole 160 documents and said, you know what, I think that there's just bad faith in the Vaughan index for all of these documents. And since everyone agreed that this is a sample set and I could use this to adjudicate the 2,000 documents, I think there must be bad faith with regard to that. And so, therefore, produce it. And that seems like an approach that the parties could agree to. And so, I'm just wondering, what was everyone trying to figure out by going through this exercise? Well, first of all, I don't think the parties agreed that if the sample documents reflected that summary judgment would not be appropriate for the redactions at issue, that it would therefore bind the redactions and the rest of the 2,000 documents. I mean, the court would need to make sort of individual determinations about the 25% and why they were not statutorily withheld. And I don't sort of see how, given that it's not the same documents in the rest of the production, how you could say that because an individual redaction on page 12 was incorrect under FOIA law, that that sort of extrapolates out to the rest of the documents. But I also want to point out that courts have considered the question of what you do when there's evidence of bad faith and what you sort of consider as the appropriate remedy. And they have uniformly said that the appropriate remedy, when there is a finding of bad faith, and again, I contest that there was one here. And this is a direct quote from the D.C. Circuit. The remedy for a showing of bad faith is to review the agency affidavits with greater scrutiny, not to require disclosure of properly exempted documents. And so in your hypothetical, if 50% of the redactions are fine, the district court cannot sort of use the sample to order production of the rest of the documents that include vast swaths of statutorily lawful redactions, including in this case Social Security and personal identifying information, information that I think would be clearly protected under attorney-client privilege, sensitive law enforcement information, that I don't really understand plaintiffs to be asking for in this case. I think they agree that that information, if it were considered on an individual basis, could be lawfully redacted. And so if the sample turns out not to be a sort of method for extrapolating out the lawfulness of the redactions, then the next step is to apply greater scrutiny on an individual basis to the documents in question. And I'd like to remain reserved some time for rebuttal, so if the court does not have further questions, I would be happy to reserve some time. Certainly, counsel. Thank you. Ms. Caputin. Yes. May it please the court. I would like to address two main points today. First, that ICE did not meet its burden of establishing the applicability of the FOIA exemption. I would like you to start where I started with Ms. Myron. Is there an injunction? Your Honor, I don't think that the district court opinion phrased it in terms of injunctive relief. Is there anything that might be deemed to satisfy Rule 65? It does not appear that the court made an order pursuant to Rule 65. So, my question for her was, why didn't you ask the district court to enter an appealable order before you appealed? My question for you is, why didn't you alert the district court to the noncompliance with Rule 65? In order to have an appeal, you have to have an order being appealed. I understand, Your Honor. That was perhaps an oversight on the part of both parties. So, the next question is, what should we do? Should we dismiss the appeal, or should we order the district court to comply with Rule 65? I think the court should dismiss the appeal. Though, of course, your brief didn't ask for that. Right, but you're asking. Have we dismissed the appeal in the past, or have we ordered compliance with Rule 65? There are certainly a lot of cases that have done the latter. If it's an injunction order, then it has to comply with Rule 65. Well, we know it has to comply with Rule 65. It's not an optional rule. All right. Please proceed. Thank you. So, the two points I'd like to address are, one, that ICE did not meet its burden in establishing the applicability of the FOIA exemptions, and second, that the district court consequently had authority to order the remedy of production. All right. Let me ask you just a targeted question. The defendant says, asserts, I don't know whether it's true, but the defendant asserts, that some of the documents contain individual Social Security numbers, which are plainly protected from disclosure. Those are third parties who haven't had any chance to be before the district court. Why should any errors or even, let's say, bad faith by the government's lawyers expose those strangers to the litigation to identity theft? That's the normal result of the disclosure of Social Security numbers, right? Why should misbehavior by the government's lawyer expose these innocent people to identity theft? Why? The district judge certainly didn't give a reason. I think the answer lies in the statutory text of FOIA. So, the statute, of course, does recognize a number of exemptions, but it says that in determining whether records were improperly withheld, quote, the court shall determine the matter de novo and may examine the contents of such agency records in camera, and I'm skipping, and the burden is on the agency to sustain its action, unquote. So, what the statute says is that the burden is on the agency to prove the applicability of the exemptions, and that if it doesn't do so— The agency says, we will be happy to point to the Social Security numbers, but the district judge has said, I refuse to look. Right, so— That's how we got here. Well, we didn't get here because of that. We should have had a Rule 65 judgment, but the agency says, we'd be happy to show you this. The district judge says, I don't want to hear from you. I'm done. Right, because by that point, it had been two years of litigation. So, what the district court said was that the agency doesn't get infinite chances to correct or prove or meet that burden that's in the statute. So, do you think it's appropriate to expose innocent people to identity theft because the government's lawyers have been very bad? Well, I think that if the government doesn't meet its burden and documents are consequently produced, then inevitably documents that are subject to the exemptions will be disclosed, and that's the consequence— unauthorized access to law enforcement databases. I can imagine a lot of things going wrong with that, too. You could imagine, in cases arguably involving foreign transactions, national secrets claims, although I didn't see that in the government's brief. But again, the functional question is, does bad behavior by the lawyers entitle anybody to access secret law enforcement databases? So, what the district court found was that the evidence the government put forward of the applicability of the FOIA exemptions was unreliable. And so, for example, to your law enforcement point, the government contended that an attorney's publicly filed contact information— I know, that's why the judge was frustrated. There was a claim of secrecy in stuff that is on a publicly filed document. Fine, it's a stupid claim of secrecy. I'm trying to figure out whether—and there can certainly be a remedy, right? These lawyers can be sanctioned in some way. Judges have got lots of options. The nature of the question I'm asking is, under what circumstances can a judge punish innocent third parties for the misconduct of the government's lawyers? It can do that when the government fails to meet its burden under FOIA. The government says, we are happy to point to the Social Security numbers. And the judge says, I'm not looking. That's how we got here. Well, the judge did give them a chance twice to file an affidavit, a supplemental affidavit, a Vaughn index, a supplemental Vaughn index. Is the judge required infinitely to allow ICE to go back and say, wait, wait, this is subject to one of the exemptions. Now we can really prove it to you, although we didn't do it—although there are all kinds of objective indicia of the unreliability of our Vaughn index in the record. Could I ask you to—I would like to get your thoughts on what the purpose of this exercise was with regard to the 160-document sample? Yes. And why the court thought it was appropriate to expand its judgment or its decisions with regard to the 160 to the 2,000 documents. So, as I understand it, the purpose of the sampling was to simplify the briefing of summary judgment. Right. And so the sampling went to the reliability of the Vaughn index. So plaintiff, of course, argued that it's completely unreliable. Defendant said, no, it is. And so the parties both wanted to provide samples to the district court, examples of their contentions. And so that sampling— And so what was the district court—what did the parties think the district court would do if it found that the Vaughn index was unreliable? So the sampling exercise didn't relieve ICE of its burden to establish the applicability of the exemptions. What plaintiff thought that the sampling would establish is that the Vaughn index simply wasn't reliable. With regard to the 160. Right. But there were more than 10,000 pages of documents withheld. The sampling wasn't intended to relieve ICE of the burden of at least explaining what the reasons were for the withholding of those documents. And so what the court found—  So if—I guess the—what you're telling me is that if the court could find that the Vaughn index, the 160, was not reliable, then the question is, with that information, did the parties agree that the court can then apply that ruling to the remaining 2,000 documents? There wasn't such— Before an index was even created for those 2,000 documents. I'm sorry, the question is, did the parties agree that once the court made a finding as to the sample, it could then extrapolate—  Yes, as to the reliability of the Vaughn index. But, as I understand it, ICE hadn't even created a Vaughn index for the other documents, right? Right. Right. So— So is it—was the court going to then apply a presumption that whatever ICE produced for those 2,000 documents wasn't going to be reliable? Like, I guess I don't understand how that would translate. Right. So there are two separate issues, as plaintiff sees it. There's the fact that there was no justification at all given for many of the documents that were withheld. And then there's the fact that for the documents that were included on the Vaughn index, there wasn't sufficient justification, or there were indicia that the Vaughn index was unreliable. So I think those are separate. And the statute doesn't permit the parties, even if they had agreed, to say that ICE doesn't need to justify the withholding of the remaining 10,000 documents. That's a statutory requirement, is that they have—if they're withholding documents, they need to satisfy the criteria. I mean, it's a tricky problem, right? It's a tricky problem for the parties and for the district court, because you have thousands, you know, 13,000 pages of documents, and you're trying to find some way of trying to adjudicate that big volume of documents using some sort of sampling. But I guess I'm just—so I'm just trying—it wasn't the papers, I'm just trying to figure out what the terms of that agreement—what the terms were. And it seems like they weren't really particular kind of terms that the parties agreed to as to how the summary judgment with regard to these documents would be used. Right. There certainly wasn't an order saying if the sampling is reliable, then, you know, ICE doesn't have to produce the 10,000 pages. But what is clear from the record is that the—there were 23 percent errors in the 100 pages of sampling that was produced. So ICE doesn't contest that, even in its reply brief. So 23 percent of the errors ICE determined as reflected in docket number 89, the original Vaughn Index, and docket number 101, its additional statements of fact, that there were 23 percent of the documents sampled that it inappropriately applied the exemption criteria. So what—as the district court pointed out, if—when sampling is conducted, courts are permitted to extrapolate from a sampling analysis. So what it concluded, I think— I guess my perspective, it depends on what the parties agreed to and also what the court told the parties it would do with it. And also what the statute says. So if the court determined, you know, the sampling shows that the analysis is unreliable—that so it might be permitted—or let's say it concluded it was reliable, it could extrapolate then that the rest of the withholdings asserted are reliable, you know, that we can count on what the government said. But the government still would have had to justify in some way the withholdings. And for the vast majority of the withholdings, it didn't even attempt to do that, even in summary form. So that's one of the biggest problems, and it is one of the problems the district court identified, is that for many of the withholdings, there wasn't any asserted justification at all. I'd like to address also the issue of good faith as it relates specifically to claimed FOIA exemptions. So as the appellee argued, there was ample justification and basis in the district court's opinion for a finding of bad faith, but the statutory text, appellee notes, does not require a finding of bad faith in order to order disclosure. And in fact, in the FOIA text, it says that the court shall determine the matter de novo. So the court has the authority, does not have to defer to agency representations about the applicability of an exemption, and can make that determination de novo, and that's in section A4B. And again, the burden is on the agency to sustain its action, meaning to sustain its withholding. There's no mention of good faith in the statutory text, and it's not something that the plaintiff has to affirmatively prove, as ICE suggests. ICE's position is that if it made mistakes, which it acknowledges it did, and then corrects those errors, then it should be credited for having made the corrections, and that actually cuts in its favor, and it should be permitted to just continue making the corrections, and that essentially the requester would have to make an affirmative showing of bad faith. And it cites in support of that contention to the Oglesby case, which does not in fact require a showing of bad faith. It merely shows that an isolated mistake does not necessarily invalidate an otherwise detailed and persuasive affidavit. So here, the district court did not find that there was an otherwise detailed and persuasive affidavit. It identified a long list of problems with the agency's affidavit and also with its VON index. ICE also cites the August v. FBI case. This is a D.C. Circuit case from 2003, and I see that I'm out of time. Thank you, Ms. Caput. Thank you very much. Ms. Marra, anything further? Yes, thank you. I'd like to make sort of two very brief points. The first on the sample question, Judge Lee, I think it's helpful to point to the Muropol case out of the D.C. Circuit in which the court found that there was a 25% error rate in the sample, and its remedy for that was ordering the agency to reprocess all of the  I think that would be a path forward if the sample were to be revealed to be problematic. It's not to order the disclosure of all the documents, including the 75%, as we discussed in the first part of the argument. That was fine. And I think that leads to my second point, which is that the primary problem here is that most of the VON index is fine. It's in the government's joint appendix starting on page 21. It has detailed explanations for why certain material is subject to the various privacy exemptions. It's subject to deliberative process privilege or attorney-crime privilege, and the district court sort of blew through all of that on the basis of three errors. I can point you to— Ms. Byron, how many chances do you think the government is entitled to to satisfy a district court in how sufficient its VON index is? I'm not sure I can answer that question in the abstract, but I do think it's helpful to contextualize what happened here. So this case, when it was in district court, involved FOIA requests at seven agencies. The district court set a very aggressive production schedule of 1,500 pages a month, and ICE, when it—yes, there were mistakes, but when it found those mistakes, it corrected them and sought to release as much information as it lawfully thought was being withheld. And again, I can point you to half a dozen cases in which courts found that mistakes, including inconsistent redactions, delay, the redaction of something that had previously been released, that that doesn't rise to the level of bad faith, that where there are mistakes, it may be that the court is required to take a closer look at some of the redactions, but that it does not rise to the level of totally disregarding submissions by the agency, most of which are fine and most of which would justify the lawful withholding of the information in question, and to sort of skip over that and instead require release of the full 2,000-page record, including, I think as we discussed, materials that were not before the court in its consideration of the record. If the court has no further questions, we ask that you reverse. Thank you very much. The case is taken under advisement.